UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEROME HARDENE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  4:22-cv-01229-AGF |
| ) | |
| ) | |
| ST. LOUIS PUBLIC LIBRARY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Jerome Hardene filed this action, pro se, against Defendant the St. Louis Public Library ("the Library"), seeking relief for an alleged invasion of privacy under 42 U.S.C. § 1983 and state law, and for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., arising out of his use of the bathroom at the Library's Julia Davis Branch.  The matter is now before the Court on the Library's motion for summary judgment.  ECF No. 71.

The Library filed this motion on August 14, 2024, properly supported by a Statement of Uncontroverted Material Facts and the documentary evidence upon which the Library relies on.  Although Plaintiff filed memoranda opposing the motion,[1] Plaintiff

---

[1] Plaintiff has filed two documents setting forth his opposition to the Library's motion for summary judgment. ECF Nos. 77 & 78. The first, ECF No. 77, is his memorandum in opposition to summary judgment and attaches several exhibits, most of which are copies of the Library's exhibits.  The second document, ECF No. 78, is styled as a "Motion in Opposition to Defendant's Motion for Summary Judgment" and merely requests that the Court deny summary judgment on the ground that genuine issues of material facts exist.  The Court has treated this "motion" as a supplemental memorandum

failed to properly respond to the Library's Statement of Uncontroverted Material Facts, in violation of Local Rule 4.01(E).  Accordingly, "all matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment" to the extent properly supported by the record.  E.D.Mo. L.R. 4.01(E).

As such, and for the reasons set forth below, the Court finds that the Library is entitled to judgment as a matter of law as to Plaintiff's federal claims and will grant the Library's motion as to those claims.  The Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claim and will dismiss that claim without prejudice.

## BACKGROUND

For the purpose of the motion before the Court and pursuant to Local Rule 4.01(E), the record establishes the following.  Plaintiff claims to have been a "card-carrying member" of the Library for "well over thirty-five (35) years."  ECF No. 1, Compl. ¶ 15.  In his deposition in this case, Plaintiff testified that had visited the Julia Davis Branch on numerous occasions prior to the events at issue in this lawsuit and that he had previously used the bathroom at this branch without incident.  ECF No. 73-3 at 49:20-50:2.

On September 9, 2022, Plaintiff entered the Julia Davis Branch to use the men's bathroom.  ECF No. 73, Def.'s SUMF ¶ 55.  The men's bathroom at this branch was open to the public and had a main entryway door.  Immediately inside the entryway was a

---

in opposition to summary judgment.

partition wall that divided the entryway from the urinal and stalls further inside the bathroom.  The partition wall blocked the line of sight from the entryway to the rest of the bathroom.  Past the partition wall, the bathroom contained a urinal and two stalls. [2]  Both stalls had doors attached to them for individual privacy, and the stall furthest from the door was a slightly larger, wheelchair accessible stall.

When Plaintiff arrived at the men's bathroom on September 9, 2022, the entryway door was propped open. Def.'s SUMF ¶¶ 61.  Upon entering the bathroom, Plaintiff closed the entryway door behind him.  Def.'s SUMF ¶¶ 62.  He then rushed into the first stall but did not close the stall door before starting to use the toilet.  In Plaintiff's original complaint, Plaintiff indicated that he could not close the stall door because of his disability.  Compl. ¶ 19.  However, in his deposition in this case, Plaintiff testified that he did not close the door because he had to use the bathroom urgently.  ECF No. 73-3, Pl.'s Dep. at 91:3-13.

Plaintiff alleges that while he was in the stall, the Library's Public Security Officer, Vanessa Keys, opened the bathroom's entryway door and remained in the entryway "[a]t all times" while Plaintiff used the bathroom.  Compl. ¶ 22.  Plaintiff alleges that, while standing in the entryway, Keys shouted that it was the Library's policy to keep the restroom door open in order to prevent homeless individuals from entering the restroom in order to wash themselves in the sink.  *Id.* ¶¶ 20-24.  However, an incident

---

[2]     Plaintiff admitted in his deposition in this case that, from the vantage point of a person standing in the entryway, only the partition wall was visible and the urinal and stalls could not be seen.  ECF No. 73-3 at 85:16-86:7.

3

report created by the Library the same day of the incident (September 9, 2022), as well as an email sent by the Library's regional manager to the manager of public safety that day, both indicated that the entryway door was propped open on this occasion due to a strong odor lingering in the bathroom and to provide fresh airflow following a cleaning.  ECF Nos. 73-6, 73-2.  Both documents further indicated that when Plaintiff complained about the door being open after he finished using the bathroom, Library staff advised Plaintiff that he was "welcome to use the Library and that the restroom doors would be closed." ECF No. 73-6; *see also* ECF No. 73-2.

There is no evidence in the record that the Library had any formal or official policy to keep the entryway bathroom door open.  The only mention of the bathrooms or restrooms in the Library's Public Safety Policy, Procedures, & Expectations Manual was to state, in relevant part, that Public Safety Officers such as Keys check all areas of the Library, including the bathrooms, as part of their patrol to keep the Library safe for its patrons.  Def.'s SUMF ¶ 18.  Further, in the above-noted email communications exchanged between Library staff on the day of the incident involving Plaintiff, the Library's manager of public safety stated:

> The restroom doors will need to be closed during public hours. Public Safety staff is to check the restroom as often as possible. The doors are equipped with electronic locks and the doors need to operate from what was put into place.
>
> We have to respect the fact that the door has to be closed during public service hours. You really don't want to smell the scent that comes from the restroom.

ECF No. 73-2 at 2.

4

In support of his contention that the Library maintained a policy to keep restroom doors open, Plaintiff cites to one of the Library's exhibits (Def.'s Ex. B, which Plaintiff has styled Pl.'s Ex. 3), which appears to be an email from the Library's manager of public safety dated May 5, 2023. In that email, the manager states:

> This is pertaining to IR 4756 Walnut Park. I talked to my PSO about this and she stated she told the customer we had a policy on the doors having to stay opened. I corrected her on that.
>
> All restroom doors must be closed during public service hours. The restrooms doors can be propped open at the end of the day, while custodial staff is cleaning them before business hours and when having to clean for a clean up request during open business hours and will need to close the door after the cleaning.
>
> Can we please remind the staff to close the restroom doors during business hours and there is no policy or procedure on propping them open.

ECF No. 73-2 at 4, ECF No. 77-1 at 43.

Plaintiff filed this three-count complaint against the Library[3] on November 17, 2022, asserting a state-law claim of invasion of privacy (Count I), a Fourth and Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 (Count II), and a disability discrimination claim pursuant to the ADA 42 U.S.C. § 12101, et seq. (Count III).[4]

---

[3] Plaintiff originally also named an unidentified individual Defendant, described as the Sheriff's Deputy "who was working as a Security officer at" the Library. ECF No. 1. This individual was ultimately identified as the above-noted Vanessa Keys. However, Keys was dismissed from this lawsuit on September 22, 2023, due to lack of timely service, as Plaintiff failed to obtain proper service information for Keys. *See* ECF No. 31.

[4] Plaintiff incorrectly labels both his second and third claims as "Count II." For the sake of clarity, the Court refers to Plaintiff's claim for Violation of Plaintiff's Fourth and Fourteenth Amendment Rights (Compl. ¶¶ 58-62) as Count II and Plaintiff's claim for Violation of the ADA (*Id.* ¶¶ 63-69) as Count III.

Plaintiff's only requested relief is damages in excess of $25,000 (Compl. at 11), and Plaintiff indicated in his deposition that he does not seek injunctive relief.  *See* Pl.'s Dep. 109:11-25.

The Library seeks summary judgment of all counts. The Library argues that the undisputed facts demonstrate: (1) Plaintiff cannot establish municipal liability under § 1983 because there was no underlying constitutional violation and because the Library has no official policy, custom, or training that caused the alleged violation here; (2) Plaintiff's ADA claim fails because Plaintiff admits there was no causal connection between the alleged discrimination and his disability and because Plaintiff's requested relief under Title III of the ADA is unrecoverable; and (3) Plaintiff's state-law claim for invasion of privacy is barred by sovereign immunity and, in any event, fails on the merits.

On July 9, 2024, after Keys was dismissed as a defendant from the suit, this Court granted Plaintiff's motion to reopen discovery so that Plaintiff could depose Keys.  ECF No. 57.  Further, after Plaintiff provided the information required under Local Rule 2.06, the Court granted Plaintiff's motion for a subpoena, instructed the United States Marshals to serve the subpoena on Keys at the address provided by Plaintiff, and extended the discovery period once again to permit Plaintiff to depose Keys.  ECF No. 76.

However, on September 24, 2024, the Marshals returned the subpoena unexecuted, stating that the "'Vanessa Keys' at the assigned address suffered from a stroke and is currently residing in an unknown nursing home" and that the physical information the Marshals were able to obtain regarding this individual did not match the description of the "Vanessa Keys" that Plaintiff intended to be served.  ECF No. 80.  On this same day,

6

an individual named Thomas Keys filed a letter to this Court stating that his "sister, Vanessa, was served a summons to appear in court," and that he wished for his sister to be excused from such appearance because, following an aneurysm in October of 2023, she was "incoherent and unable to communicate". ECF No. 79.

Plaintiff thereafter filed a notice stating that he had been unable to take the deposition of Keys but that he was not "suggest[ing] that Defendant [was] in any way responsible for [Keys's] absence from being deposed." ECF No. 83. Nevertheless, Plaintiff requested that the "adverse inference rule" be applied and that the Court find, based on Keys's unavailability, that Keys would have provided testimony favorable to Plaintiff. *Id.* The Library has opposed Plaintiff's request for an adverse inference as to Keys, and Plaintiff has not sought any further relief with respect to this deposition.

Plaintiff has, however, moved to strike the Library's opposition to his request for an adverse inference as to Keys on the ground that the opposition contains allegedly impertinent and scandalous information in that it refers to Plaintiff as a "seasoned litigant." ECF No. 85.

## DISCUSSION

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "when, viewing the facts in the light most favorable to the nonmovant, there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015). "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving

7

party.  *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

Once the movant has met his burden, the nonmoving party may not rest on the allegations in his pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).  A plaintiff's pro se status does not excuse him from responding to a defendant's motion "with specific factual support for his claims to avoid summary judgment."  *Beck v. Skon,* 253 F.3d 330, 333 (8th Cir. 2001).

**<u>Plaintiff's Requests for an Adverse Inference and to Strike the Library's Response</u>**

The Court will deny Plaintiff's request for the Court to draw an adverse inference at this summary judgment stage regarding what testimony Keys might have given had she been available for deposition.  The Missouri caselaw that Plaintiff cites in support of this request, to the extent it applies to this federal lawsuit (which is questionable), confirms that it is "[o]nly when the missing witness is 'peculiarly available' to the defendant" that a trial court may "permit argument that the missing witness would have testified adversely to the defendant."  *State v. Washington*, 444 S.W.3d 532, 544 (Mo. Ct. App. 2014) (cited by Plaintiff at ECF No. 83 at 2).

Keys was not "peculiarly available" to the Library in this case.  To the contrary, Plaintiff has acknowledged that the Library was not responsible for her failure to appear.  Further, it is far from clear that the hospitalized Vanessa Keys referenced in Plaintiff's

8

unexecuted subpoena is the same individual described in Plaintiff's complaint. And even if she were the same individual, her undisputed medical condition made her equally unavailable to all parties during most of this litigation.

For these reasons, the Court will deny Plaintiff's request for an adverse inference as to Keys. The Court will also deny Plaintiff's motion (ECF No. 85) to strike the Library's opposition (ECF No. 84) to that request. Plaintiff has not demonstrated that the Library's mere reference to Plaintiff as a "serial litigant" or anything else in the Library's opposition constitutes such "redundant, immaterial, impertinent, or scandalous" material as to warrant striking under Federal Rule of Civil Procedure 12(f). Nevertheless, in resolving the instant motion for summary judgment, the Court has disregarded any reference to Plaintiff's past lawsuits and has only considered the facts and procedural history at issue in this case.

### Section 1983 Claim (Count II)

Section 1983 imposes liability against "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State deprives someone of a federal constitutional or statutory right." 42 U.S.C. § 1983. Although municipalities are subject to liability § 1983, "departments or subdivisions of the [c]ity government" are generally not considered "juridical entities suable as such." *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). In this case, however, the Library does not contest that it is suable "person" acting under the color of state law, akin to municipality, under § 1983. The Court will therefore assume the same.

A government entity "may be liable under [§ 1983] if the governmental body itself

9

'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 692). But before a municipality or government entity can be held liable under § 1983, "there must be an unconstitutional act by a municipal employee." *Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005).

Further, government entities "cannot be held liable under § 1983 on a theory of respondeat superior." *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). Rather, the plaintiff must first establish that a constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 953 (8th Cir. 2024) (cleaned up and citation omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Further, the plaintiff must prove that "the municipal policy or custom was the moving force behind the constitutional violation." *Watkins*, 102 F.4th at 953 (cleaned up and citations omitted).

Here, Plaintiff has not established an underlying constitutional violation. Even assuming that the constitution protects an individual's right to urinate or defecate in reasonable privacy,[5] the undisputed evidence confirms that Keys could not have seen

---

[5] *See, e.g.*, *West v. Dallas Police Dep't*, No. CIV. A. 3-95CV-1347P, 1997 WL 452727, at *6 (N.D. Tex. July 31, 1997) (citing cases recognizing such a right).

10

Plaintiff using the bathroom while she remained in the entryway (as Plaintiff admits she did at all times), in light of the layout of the bathroom and its partition wall.

In any event, even if this incident somehow violated Plaintiff's constitutional rights, Plaintiff has failed to establish the Library's responsibility for such a violation. Plaintiff has not provided any evidence of an official Library policy to keep the bathroom door open. In fact, the only reference to any Library policy or training regarding bathroom doors in this record is that the Library's policy was to keep the doors closed. *See, e.g.*, ECF No. 73-2. To the extent that Keys advised Plaintiff otherwise, [6] Plaintiff has not alleged, let alone provided evidence to demonstrate, that Keys had any policymaking authority on behalf of the Library. *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016) ("An action can constitute official municipal policy only if the decisionmaker in question possesses final authority to establish municipal policy with respect to the action in question.").

Neither has Plaintiff demonstrated a widespread pattern of conduct to establish a Library custom of keeping the bathroom door open. Rather, the incident report and email communication regarding this incident reflect that it was an isolated occurrence, perhaps due to a strong odor coming from the bathroom on that day, and that Library staff immediately attempted to rectify the issue and keep the bathroom door closed in the future. Indeed, Plaintiff admitted that he had used the bathroom in question previously without incident. The only other evidence in the record regarding a Library bathroom

---

[6] Further, Plaintiff has provided no evidence, as opposed to mere allegations, that Keys in fact made such a statement.

11

door being open is an email dated well after the events at issue in this lawsuit and appears to relate to a different Library branch. *See* ECF No. 73-2 at 4, ECF No. 77-1 at 43. But this email only confirms, by statement of the Library's manager of public safety, that the Library's intended policy was that "[a]ll restroom doors must be closed during public service hours." *See* ECF No. 73-2 at 4, ECF No. 77-1 at 43. On this record, no reasonable jury could find that the Library had widespread custom or practice to keep bathroom doors open. *See Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 ("To trigger municipal liability based on unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law.")

For all of these reasons, the Library is entitled to summary judgment on Plaintiff's claim under § 1983 (Count II).

**ADA Claim (Count III)**

Plaintiff purports to assert a claim under Title III of the ADA, which "prohibit[s] public accommodations from discriminating against individuals because of their disabilities." *Rossley v. Drake Univ.*, 979 F.3d 1184, 1196 (8th Cir. 2020) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681-82 (2001) and 42 U.S.C. § 12182(a)). To establish a discrimination claim under Title III, Plaintiff must demonstrate that (1) he was a qualifying individual with a disability, (2) the Library was a "place of public accommodation," and (3) the Library "failed to make reasonable modifications that would accommodate [Plaintiff's] disability without fundamentally altering the nature of the public accommodation." *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076 (8th Cir.

12

2006).

But, as the Library correctly notes, damages are not recoverable under Title III. *See Hillesheim v. Holiday Stationstores, Inc.*, 953 F.3d 1059, 1062 (8th Cir. 2020) ("This court and other circuits have made clear that injunctive relief is the only private relief available in a Title III case" and even "nominal damages are not available under Title III").

Plaintiff confirmed in his deposition that he is not seeking injunctive relief in this case. Nor has he demonstrated that he would be entitled to such relief on this record. As Plaintiff only seeks damages and not injunctive relief, the Library is entitled to summary judgment on Plaintiff's claim under Title III. *Woods v. Wills*, 400 F. Supp. 2d 1145, 1163–64 (E.D. Mo. 2005) ("Because plaintiff Woods did not seek injunctive relief in the complaint, her claims under Title III of the ADA fail to state a claim upon which relief may be granted. Defendant' motion for summary judgment, construed as a motion to dismiss, should therefore be granted on this claim.").

Plaintiff does not purport to seek relief under Title II of the ADA, which permits the recovery of damages. But even if Plaintiff had sought such relief, he would have been required to "prove discriminatory intent," meaning "evidence of the [Library's] deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights," before being able to recover compensatory damages. *See Hall v. Higgins*, 77 F.4th 1171, 1181 (8th Cir. 2023). No reasonable jury could find discriminatory intent or deliberate indifference to warrant

13

damages under the ADA on this record.[7]  Rather, the undisputed evidence demonstrates that the Library agreed to Plaintiff's requested accommodation (a closed bathroom door) immediately after he complained to Library staff, and that the Library's policy was in fact to keep bathroom doors closed.  *See, e.g.*, *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 576 (8th Cir. 2024) (explaining that deliberate indifference generally requires a plaintiff to show that the "defendant actually knew of, but deliberately disregarded" the need in question).

Thus, the Library is entitled to summary judgment on Plaintiff's ADA claim (Count III).

**Remaining State-Law Invasion of Privacy Claim (Count I)**

"In the usual case where all federal claims are dismissed . . ., the balance of factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (citation omitted); *see also* 28 U.S.C. § 1367(c).  Because the Court will grant summary judgment in favor of the Library on all federal claims, the Court will exercise its discretion to decline supplemental jurisdiction over Plaintiff's remaining state-law claim and will dismiss Count I without prejudice.

## CONCLUSION

For the reasons set forth above,

---

[7]  Indeed, Plaintiff testified in his deposition that his decision not to shut his stall door was due to his need to use the bathroom urgently, rather than any disability.

14

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED in part as to Plaintiff's federal claims (Counts II and III) only.** ECF No. 71.

**IT IS FURTHER ORDERED** that Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state-law claim in Count I; that claim is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's request for an adverse inference and his motion to strike are both **DENIED**. ECF Nos. 83 & 85.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of November, 2024.